In re KRETSCH.

(District Court, S. D. New York. August 16, 1909.)

No. 30.

BANKRUPTCY (§§ 408, 486*)—DISCHARGE—CONTEMPT OF COURT.

While the perjury of a bankrupt in his testimony on proceedings for his discharge will not prevent the granting of the discharge where the other evidence shows him to be entitled to it, such perjury is a contempt of court for which he may be punished.

[Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. §§ 408, 486.*]

In Bankruptcy.

Katz & Sommerich, for bankrupt.

Waldo G. Morse, for trustee.

HAND, District Judge. I have read all the testimony taken on the discharge proceedings and nearly all that taken at the first meeting of creditors, and I agree with the learned master that the discharge must be granted, so that I shall confirm the report and grant a discharge.

In regard to the contempt proceedings, however, I shall make a somewhat different disposition. The master did not believe the bankrupt, and I am not inclined to believe him either. His testimony is full of misstatements, and, while perhaps some of these are to be accounted for by his ignorance of English, it seems hardly possible that some of them do not constitute willful misstatements of fact. Especially does it seem that his testimony that the title to all property was taken in his wife's name must have been deliberately false. It is extremely unlikely that he should have innocently been mistaken about these facts, or that he misunderstood the questions. The testimony was not immaterial, because he was concerned to show that he had never taken any property in his own name. That would have been the best corroboration of his version of the transactions which necessitated all the property being his wife's. Had it been known, as it afterwards was shown, that he had been taking property in his single name or in the joint names of his wife and himself, his story required more explanation. It ·is quite true that the explanation did subsequently satisfy the master, but that has nothing to do with the truth of his testimony, when he gave it, which is the question here. Now, the bankrupt's perjury in the proceedings for his discharge would not be a ground for depriving him of the discharge itself, at least as I understand the statute. It would indeed be seldom that, when he had perjured himself, the court could be persuaded of enough of the truth of his story to grant him a discharge, but in this case that unusual thing may have happened, and the master has been satisfied that the money transferred to Mrs. Kretsch was, in fact, hers. As I have said, I agree with the master, despite Kretsch's misstatements during the hearing.

While, however, those misstatements, even if corrupt, will not bar his discharge, they are none the less a contempt of court if they were in fact corrupt, and in that event I shall punish the bankrupt for them. I shall therefore ask the master, who saw the bankrupt, and whose opinion is alone of moment upon the question of his intent, to certify to me whether in his judgment the bankrupt's statements were deliberately and knowingly false which relate to the taking of title in his wife's name on pages 205 and 207 of the testimony, or which relate to his earnings as contained in the excerpts in the moving papers. There is no doubt of the untruth of his statements regarding the taking of title, but as to those regarding his earnings there is some ambiguity. As to both I cannot decide whether he was willfully swearing falsely without seeing him; and upon this issue I should especially like the assistance of the learned master. The bankrupt shall have such further opportunity to explain these statements as he may wish at a hearing, provided that the added cost of any such hearing shall be borne by him, but he must not extend the proceedings beyond two hearings. Upon the coming in of this report, I will dispose of this proceeding, either by dismissing it or by committing the bankrupt for a term, to begin if and when he shall interpose his discharge as a defense to Denofrio's judgment, whether Denofrio shall use it as a counterclaim or otherwise. While I cannot prevent the granting of a discharge, I can punish him for a contempt, if the bankrupt has been guilty of a contempt in his efforts to get it. Of course such an order will not prevent his use of it, for he may prefer to stand committed for the term I shall fix, rather than forego its use. That I cannot help, for I can here only punish him for his contempt. Instead of committing him unconditionally, I shall only do so in case he decides to make use of a discharge, to the procurement of which he has been willing to perjure himself.

Let the objecting creditor prepare an order for such a reference as I have indicated, with the other provisions mentioned above. I will not sign the discharge until the termination of the contempt proceeding.